Markman, P.J.
 

 The prosecutor appeals by leave granted the trial court’s order granting defendant’s motion for resentencing. Defendant also appeals by
 
 *668
 
 leave granted,
 
 [1]
 
 challenging his sentence of 15 to
 
 22
 

 [1]
 

 k
 
 years following his guilty plea of second-degree home invasion, MCL 750.110a(3); MSA 28.305(a)(3), and of being an habitual offender, second offense, MCL 769.12; MSA 28.1084. We reverse the order granting resentencing, vacate the portion of the judgment of sentence imposing a consecutive sentence, and remand for entry of a judgment of sentence providing that defendant’s sentence is to be served concurrently with his Louisiana sentence.
 

 On July 8, 1996, defendant entered a house in Eaton Rapids Township without permission. Defendant claimed that he entered the house because he was hungry and wanted to find food, but he admitted that he also took a canister full of coins from the top of the refrigerator, and he was also found in possession of credit cards and jewelry. Before accepting defendant’s plea of guilty, the trial court advised defendant that he was facing the following penalty:
 

 This is a crime commonly known as Home Invasion, Second Degree. It’s a 15-year felony. That is, you can receive up to 15 years in prison and/or a fine of 3 thousand dollars. . . . [I]f you’re convicted of being a second felony offender, the maximum of 15 years in prison goes up to a maximum of 22 and a half years in prison by being a second felony offender.
 

 Defendant acknowledged that he understood the possible penalties he was facing and then pleaded guilty. On October 31, 1996, the trial court sentenced defendant to 15 to 2272 years, citing defendant’s eleven prior
 
 *669
 
 felonies, the fact that defendant was on escape status from a Louisiana prison, the victim’s desire that defendant receive the maximum penalty, and the court’s opinion that defendant likely could not be rehabilitated.
 

 Defendant moved for resentencing, contending, first, that the sentencing court failed to recognize its discretion in determining the maximum sentence that could be imposed for home invasion pursuant to the sentence enhancement provisions of the habitual offender statute and, second, that the sentencing court considered two juvenile felony adjudications that had been conducted without counsel. At a hearing before a different judge, defendant presented a letter from Calcasieu Parish Juvenile Court in Louisiana, indicating that defendant had waived counsel at one of the felony adjudications and that the prosecutor had rejected the charges regarding the other alleged felony. The trial court determined that it was unclear whether the sentencing court had considered defendant’s juvenile record, but that because the six-page presentence investigation report included two pages of juvenile history, it must necessarily have been considered. The trial court noted that the juvenile adjudications had been without the benefit of counsel and that the burden thus shifted to the prosecutor to show a valid waiver. The trial court gave the prosecutor until December 1, 1997, to meet this burden. However, an order was entered on October 24, 1997, granting defendant’s motion for resentencing. The trial court did not determine whether the sentencing court had recognized and exercised its discretion regarding the habitual offender sentence
 
 *670
 
 enhancement. The prosecutor and defendant subsequently moved respectively for leave to appeal the order granting resentencing and the original sentence. Defendant has not yet been resentenced.
 

 First, the prosecutor argues that the trial court improperly granted defendant’s motion for resentencing on the basis of the sentencing court’s possible consideration of a juvenile adjudication secured without benefit of counsel. We agree. This Court reviews the trial court’s determination of facts for clear error,
 
 People v Swirles (After Remand),
 
 218 Mich App 133, 136; 553 NW2d 357 (1996), and questions of law de novo,
 
 People v Connor,
 
 209 Mich App 419, 423; 531 NW2d 734 (1995). Prior convictions obtained in violation of the right to counsel, whether it is because of lack of counsel or because of lack of a proper waiver of counsel under
 
 Gideon v Wainwright,
 
 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), cannot be considered in determining punishment for another offense.
 
 People v Moore,
 
 391 Mich 426, 436-438; 216 NW2d 770 (1974). A defendant who collaterally challenges a prior conviction bears the initial burden of establishing that the conviction was obtained without counsel or a proper waiver of counsel.
 
 People v Carpentier,
 
 446 Mich 19, 31; 521 NW2d 195 (1994), citing
 
 Moore, supra
 
 at 440. Because proper waivers of counsel are far more frequent than unconstitutional deprivations of counsel, there is a presumption of regularity such that we presume that judicial proceedings were proper unless a defendant upholds the burden of demonstrating otherwise. See
 
 Carpentier, supra
 
 at 37, 57. Only where a defendant meets that burden is a
 
 *671
 
 Tucker
 
 [2]
 
 hearing held, at which the burden shifts to the prosecutor to establish the constitutional validity of the prior conviction.
 
 Carpentier, supra
 
 at 31. However, a defendant is entitled to resentencing only where a sentencing court has relied on an invalid conviction in imposing sentence.
 
 Moore, supra
 
 at 440;
 
 People v Haywood,
 
 209 Mich App 217, 232; 530 NW2d 497 (1995).
 

 In this case, the trial court determined at the hearing concerning the motion for resentencing that defendant had met his burden of establishing a prima facie case and that it was “at best unclear whether [the sentencing court] did or he didn’t” consider defendant’s juvenile record, because there were two pages in the presentence investigation report detailing defendant’s juvenile record and, out of fifteen or sixteen entries, only one indicated that defendant was represented by counsel. However, in his motion for resentencing, defendant challenged only two of the juvenile record entries. One entry, which states as the charge, “Truancy; F/Theft” from October 28, 1982, was rejected by the district attorney. Thus, it did not result in incarceration and could have been properly considered by the court.
 
 People v Daoust,
 
 228 Mich App 1, 19; 577 NW2d 179 (1998) (there is no deprivation of the constitutional right to counsel where a juvenile adjudication does not result in incarceration). The second entry was the January 19, 1986, charge of “UUOM/Felony” which was adjudicated on January 22, 1986. However, regardless of whether defendant upheld his burden of showing that he was
 
 *672
 
 not represented by counsel and did not properly waive counsel at this adjudication, we find no evidence in our review of the record supporting the trial court’s determination that the sentencing court relied on defendant’s juvenile record at all.
 

 The sentencing court made no mention of defendant’s juvenile adjudications. When sentencing defendant, the sentencing court stated:
 

 Victim states on Page 2 that he would hope the Defendant receives the most the law allows. And I would not expect that he’s that familiar with your criminal history. If he knew your criminal history, he would probably be astonished because it is quite astonishing.
 

 You have eleven prior felonies. You’re on escape status off [sic] Louisiana. You’ve got—would make anybody’s straight hair curl like mine.
 

 These statements also do not indicate that the sentencing court considered defendant’s juvenile record. To the contrary, the sentencing court specifically referred to defendant’s eleven prior felonies, which is significant because the record shows that defendant had eleven
 
 adult
 
 felony convictions. If the sentencing court had considered the juvenile record, it presumably would have referred to defendant’s
 
 twelve or thirteen
 
 prior felonies. Where there is a lack of any affirmative evidence that the sentencing court actually considered a possibly unconstitutional adjudication, we will not presume that the court must have considered it merely because the facts were before it. As in a bench trial where a trial court must both determine whether evidence is admissible and disregard all inadmissible evidence, we assume that the sentencing court knew the law and considered only the evidence properly before it.
 
 People v Wofford,
 
 196
 
 *673
 
 Mich App 275, 282; 492 NW2d 747 (1992). This Court has said that “ ‘a presumption of regularity exists with respect to official acts of public officers and, absent any evidence to the contrary, the court presumes that their official duties have been discharged properly.’ ”
 
 People v White,
 
 208 Mich App 126, 132; 527 NW2d 34 (1995), quoting
 
 United States v Lott,
 
 854 F2d 244, 250 (CA 7, 1988); see also
 
 Carpentier, supra
 
 at 37. Therefore, regardless of whether defendant was represented by counsel at the January 22, 1986, adjudication, we believe that defendant was not entitled to resentencing on the basis of this issue, and, accordingly, we reverse.
 

 Second, the prosecutor argues that the trial court improperly granted defendant’s motion for resentencing to the extent that the court relied on defendant’s argument that the sentencing court failed to recognize and exercise its discretion in sentencing defendant pursuant to the habitual offender statute. However, we find absolutely no evidence that the trial court did in fact rely on such argument in granting defendant’s motion because the trial court did not make reference to the argument in its decision. Thus, this issue is not preserved for appeal.
 
 People v Connor,
 
 209 Mich App 419, 422; 531 NW2d 734 (1995). We choose to briefly address this issue to make clear that it does not form an independent basis for affirming the trial court’s order granting resentencing. The habitual offender statute under which defendant was sentenced
 
 allows
 
 a court to enhance a defendant’s sentence at the court’s discretion for second and subsequent felonies, as follows: “[T]he court. . .
 
 may
 
 place the person on probation or sentence the person to imprisonment for a maximum term which is not more than 1-1/2 times
 
 *674
 
 the longest term prescribed for a first conviction of that offense
 
 or for a lesser term.”
 
 MCL 769.10(l)(a); MSA 28.1082(l)(a) (emphasis added).
 

 At defendant’s plea proceeding, the sentencing court instructed defendant regarding the sentences he was facing:
 

 This is a felony, therein contrary to Michigan law. This is a crime commonly known has Home Invasion, Second Degree. It’s a 15-year felony. That is, you can receive up to 15 years in prison and/or a fine of 3 thousand dollars. . . .
 

 [T]he Information further alleges that on on [sic] or about November 19, 1990, you were convicted of the offense of Breaking and Entering a building and unauthorized use of a motor vehicle in Circuit Court for Chambers County, Texas.
 

 Therefore, if you’re convicted of being a second felony offender, the maximum of 15 years in prison goes up to a maximum of 22 and a half years in prison by being a second felony offender.
 

 This passage, read in its entirety, does not imply that the sentencing court believed that it was required to enhance defendant’s home invasion sentence. The sentencing court informed defendant that second-degree home invasion is a fifteen-year felony, then went on to explain that this meant that defendant
 
 can
 
 “receive
 
 wp to
 
 15 years in prison.” Then, the sentencing court explained the possible consequences of a conviction for being a second-time offender: “the maximum of 15 years in prison goes
 
 up to
 
 a maximum of 22 and a half years.” This does not imply that the sentencing court failed to recognize its discretion. Rather, the sentencing court was informing defendant of the
 
 maximum
 
 term of imprisonment he
 
 could
 
 face by pleading guilty to each charge. See
 
 People v Farah,
 
 214 Mich App 156, 157; 542 NW2d 321 (1995). We
 
 *675
 
 believe that, as in
 
 People v Beneson,
 
 192 Mich App 469, 471; 481 NW2d 799 (1992), because there was no clear evidence that the sentencing court believed that it lacked discretion, the presumption that a trial court knows the law must prevail.
 
 People v Garfield,
 
 166 Mich App 66, 79; 420 NW2d 124 (1988). This Court is satisfied that the sentencing court had a clear understanding of its discretion in this sentencing.
 

 Third, defendant argues that he was entitled to resentencing because the sentencing court improperly imposed a consecutive sentence. Whether consecutive sentencing is mandated by statute is a question of law, which this Court reviews de novo.
 
 People v Denio,
 
 454 Mich 691, 698; 564 NW2d 13 (1997). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.
 
 People v Stanaway,
 
 446 Mich 643, 658; 521 NW2d 557 (1994). The Legislature is presumed to have intended the meaning it plainly expressed.
 
 People v Roseburgh,
 
 215 Mich App 237, 239; 545 NW2d 14 (1996). Thus, the first step in statutory interpretation is to look to the plain meaning of the words.
 
 People v Pitts,
 
 216 Mich App 229, 232; 548 NW2d 688 (1996). “When the language of a statute is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written.”
 
 People v Nantelle,
 
 215 Mich App 77, 80; 544 NW2d 667 (1996), citing
 
 Turner v Auto Club Ins Ass’n,
 
 448 Mich 22, 27; 528 NW2d 681 (1995).
 

 A consecutive sentence may be imposed only if specifically authorized by statute.
 
 People v Chambers,
 
 430 Mich 217, 222; 421 NW2d 903 (1988). Thus, defendant may be sentenced consecutively only if
 
 *676
 
 mandated by MCL 768.7a(l); MSA 28.1030(1)(1), which provides, in relevant part:
 

 A person who is incarcerated in a penal or reformatory institution
 
 in this state,
 
 or who
 
 escapes from such an institution,
 
 and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction of that crime, be sentenced as provided by law. The term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution in this state. [Emphasis added.]
 

 Addressing the plain language of the statute, the term “such” as used in the phrase “such an institution” is defined in the following manner: “being the person or thing or the person or things indicated:
 
 If any member be late, such member shall be suspended.” Random House Webster’s College Dictionary
 
 (1997). In addition, Black’s Law Dictionary (6th ed, 1990) defines “such” as follows:
 

 Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. “Such” represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.
 

 These definitions suggest that “such an institution” was merely intended as a substitute for the longer “penal or reformatory institution in the state of Michigan.” Using this definition of “such,” the statute allows consecutive sentencing for those who commit crimes while
 
 in
 
 a penal or reformatory institution in Michigan or while
 
 on escape status from
 
 a penal or
 
 *677
 
 reformatory institution in the state of Michigan. In addition, the statute in question states that “]t]he term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution
 
 in this state”
 
 MCL 768.7a(l); MSA 28.1030(1)(1) (emphasis added). This indicates that a defendant is to begin his subsequent term when he has completed the previously imposed term “in this state.” Defendant is not serving a term of imprisonment in an institution in this state, nor has he become liable to serve a term of imprisonment in an institution in this state (with the exception of the sentence imposed in the present case). The end of his term of imprisonment in Louisiana, therefore, is not included within the defined starting point of a subsequent consecutive sentence.
 

 We understand the prosecutor’s argument here that the consecutive sentencing statute’s deterrent effect on convicted persons considering additional crimes would apply equally to prisoners in Michigan and in other states such as Louisiana. However, when considered in its entirety, the plain meaning of the statute is that consecutive sentencing is to be imposed only where a Michigan prisoner or an escapee from a Michigan institution commits a subsequent crime. In addition, there is at least arguably a rational basis for the distinction between Michigan prisoners and those from other states, because the Michigan Legislature would presumably have a greater interest in deterring Michigan prisoners from committing additional crimes, and in enforcing discipline among such prisoners, than it would have with regard to prisoners in
 
 *678
 
 other states. Therefore, the court improperly imposed a consecutive sentence on defendant.
 

 Defendant argues that, pursuant to
 
 People v Thomas,
 
 223 Mich App 9; 566 NW2d 13 (1997), this Court must remand for a full resentencing hearing. However, defendant’s case is significantly different from
 
 Thomas.
 
 In
 
 Thomas,
 
 after the defendant was sentenced concurrently, the trial court sua sponte imposed a corrected, consecutive sentence on the defendant without notice or a hearing. In contrast, defendant’s sentence here must be amended from a consecutive to a concurrent sentence, which will benefit defendant, not increase his punishment. This is also not a case in which the trial court sua sponte corrected the original sentence without first providing the defendant with notice or a hearing. In addition, we find it extremely unlikely that the trial court here, faced with a shorter overall incarceration period because of the concurrent sentencing, would
 
 reduce
 
 defendant’s sentence upon remand, as was reasonably conceivable in
 
 Thomas
 
 where the defendant faced a longer overall incarceration. Thus, because defendant raised and fully argued this issue on appeal, and our determination will decrease the overall time that defendant must spend in prison, the due process concerns addressed by the full resentencing in
 
 Thomas
 
 are not present in this case. Instead, we believe that a full resentencing would be unnecessary and would waste the resources of the courts. Therefore, that portion of defendant’s sentence imposing a consecutive sentence should be vacated, and the case should be remanded for entry of a judgment reflecting that defendant’s sentence is to be served concurrently with his Louisiana sentence. See
 
 People v Randle-El,
 
 
 *679
 
 444 Mich 978 (1994);
 
 People v Brown,
 
 220 Mich App 680, 685; 560 NW2d 80 (1996).
 

 Finally, we address defendant’s appeal of his sentence. This Court reviews claims of disproportionality for an abuse of discretion.
 
 People v Milbourn,
 
 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of discretion may be found where a sentence is disproportionate “to the seriousness of the circumstances surrounding the offense and the offender.”
 
 Id.
 
 While a sentence that is within the sentencing guidelines range is considered presumptively proportionate,
 
 People v Broden,
 
 428 Mich 343, 354-355; 408 NW2d 789 (1987), sentencing guidelines are not applicable to the sentencing of habitual offenders. Rather, this Court’s inquiry is whether the lower court abused its discretion.
 
 People v Hansford (After Remand),
 
 454 Mich 320, 323-324; 562 NW2d 460 (1997).
 
 [3]
 

 First, defendant contends that the sentence imposed was not tailored to fit him. He claims that because his criminal history was composed of relatively minor offenses and no violent offenses, the sentencing court should not have imposed the maximum sentence, particularly where he merely entered a house to get something to eat. However, the sentencing court did take defendant’s claim that he was hungry into consideration: “You talk about, well, we went in for food. But yet you stole cash and took jewelry and credit cards. So I don’t buy that. It’s easy for anyone to say why they went in, but your actions speak
 
 *680
 
 louder than words.” Further, the presentence investigation report indicates that “the victims in this case arrived home to discover that someone had entered their residence and ransacked a number of rooms in the home.” Second, defendant suggests that he is only twenty-two years old, and that it is unrealistic to think that he lacks rehabilitative potential. Further, he asserts that his criminal behavior has not gotten worse over the years—he has simply committed several similar, nonviolent crimes. In our judgment, there is no evidence that the sentencing court abused its discretion in concluding: “You’re a criminal. You’re probably going to be a lifelong criminal. You’re clearly an habitual criminal. Counseling isn’t going to do anything for you.” There is no indication that defendant will respond to rehabilitation as an adult when the judicial system has attempted to rehabilitate him for nearly sixty percent of his life. In fact, his record shows a history of fleeing institutions and a series of probation violations. There is no indication that defendant has any intention of complying with the courts’ attempts to punish or rehabilitate him. Thus, defendant has not satisfied his burden of showing that the lower court abused its discretion in sentencing him to 15 to
 
 22lh
 
 years. Consequently, the sentence imposed by the sentencing court should be affirmed except with regard to the consecutive sentence originally imposed.
 

 For these reasons, we reverse the trial court’s order granting resentencing, vacate the portion of the judgment of sentence imposing a consecutive sentence, and remand for imposition of a concurrent sentence. We do not retain jurisdiction.
 

 [1]
 

 Defendant filed a delayed application for cross appeal in Docket No. 208733. This Court granted defendant’s application and directed that all further filings be made in Docket No. 207444.
 

 [2]
 

 United States v Tucker,
 
 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972) (prior convictions that are invalid under
 
 Gideon v Wainwright
 
 could not be considered at a subsequent criminal sentencing).
 

 [3]
 

 Defendant suggested that this Court consider legislative guidelines developed for habitual offender sentences. 1998 PA 317. However, these newly promulgated guidelines apply only to felonies committed on or after January 1, 1999, and thus do not apply to defendant. MCL 769.34; MSA 28.1097(3.4). Accordingly, we do not address them.