*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DWIGHT ANDREW JONES,

       Defendant-Appellant.

UNPUBLISHED
May 25, 2023

No. 361019
Wayne Circuit Court
LC No. 18-002173-01-FC

Before: RICK, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his resentencing for two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13, defendant 17 years of age or older). The trial court resentenced defendant to 30 to 110 years' imprisonment for each conviction. We affirm.

## I. BACKGROUND

This case arises out of the sexual assault of then-five-year-old SJ by defendant. Defendant is her biological father. The relevant facts were summarized in this Court's opinion in a prior appeal:

> [SJ] described that defendant called her into another room away from her siblings. He instructed SJ to remove her clothes and then removed his own clothes. SJ described that defendant then placed his penis into her vagina, answering in the affirmative that defendant "actually put [his penis] inside . . . your private area, . . . inside where you pee." SJ asserted that she bled from her vagina after. SJ further described that defendant put his penis inside her mouth and touched it against her butt. When SJ's mother knocked on the door, her father instructed her to get dressed.
>
> SJ indicated that she immediately told her mother about the abuse. However, SJ's mother did not contact the authorities. Rather, at some unknown point, SJ's maternal grandmother contacted Child Protective Services. SJ underwent a medical examination, but the record does not indicate how much time

-1-

passed between the assault and the exam. It appears that the examining physician noted nothing out of the ordinary.

> Defendant voluntarily came to the police station to speak with Officer Ernine Porter. Defendant denied that he had sexual intercourse with SJ. However, he claimed that he awoke one night and found SJ placing his penis in her mouth. [*People v Jones*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2020 (Docket No. 349105), at 1-2.]

Defendant was convicted by a jury of two counts of CSC-I and sentenced to consecutive terms of 25 to 55 years' imprisonment for each count. Defendant appealed to this Court, which affirmed defendant's convictions, but remanded to the trial court for further consideration of defendant's sentences. *Jones*, unpub op at 6-7.

At the resentencing hearing, the trial court determined that it would not impose consecutive sentences and instead resentenced defendant to concurrent terms of 30 to 110 years' imprisonment for each conviction. This was an upward departure from defendant's minimum sentencing guidelines range of 9 to 15 years' imprisonment, as well as from the statutory mandatory minimum term of 25 years, MCL 750.520b(2)(b). The trial court explained that the upward departure was justified because the sentencing guidelines did not adequately consider a number of factors, including SJ's young age, defendant's lack of remorse and lack of potential for rehabilitation, as well as the familial relationship between SJ and defendant. The trial court also observed that the guidelines did not account for the fact that SJ was separated from her siblings and placed in foster care after the assaults occurred. The trial court further opined that neither defendant's minimum sentencing guidelines range nor the 25-year statutory mandatory minimum term adequately reflected the gravity of his crimes. This appeal followed.

## A. VINDICTIVE SENTENCING

Defendant first argues that the trial court imposed vindictive sentences for each of his CSC-I convictions on resentencing. He maintains that this constituted a violation of his due-process rights. Defendant did not raise this constitutional challenge at any point during the trial court proceedings, and therefore, this aspect of the issue is not preserved. See *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (stating that a constitutional issue was not preserved for appeal because the defendant did not raise the issue in the trial court). Unpreserved constitutional questions are reviewed "for plain error affecting substantial rights." *Id.* (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

"A claim that a sentence is vindictive," such as one "that punishes a defendant for successfully appealing a conviction," implicates a defendant's constitutional due–process rights. *People v Warner*, 339 Mich App 125, 156-157; 981 NW2d 733 (2021), citing *North Carolina v Pearce*, 395 US 711, 723-724; 89 S Ct 2072; 23 L Ed 2d 656 (1969), overruled in part on other grounds by *Alabama v Smith*, 490 US 794; 109 S Ct 2201; 104 L Ed 2d 865 (1989). Thus, " 'whenever a judge imposes a more severe sentence after a new trial, the reasons for his doing so must affirmatively appear.' " *Id.*, quoting *Pearce*, 395 US at 726. Additionally, " '[t]he factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.' " *Id*.

These broad requirements do not apply across the board. Instead, they are limited to circumstances in which there is a reasonable likelihood that the decision to impose a harsher sentence "is the product of actual vindictiveness on the part of the sentencing authority." *Warner*, 339 Mich at 158 (quotation marks and citation omitted). Put differently, appellate courts do not generally apply *Pearce* "when the reasons for the harsher sentence after a successful appeal are apparent from the surrounding circumstances." *Id*. Thus, "when the possibility of judicial vindictiveness is only speculative, a presumption of vindictiveness does not apply and the burden remains upon the defendant to prove actual vindictiveness[.]" *Id*. (quotation marks and citations omitted).

Defendant argues that the sentences imposed by the trial court on remand are presumptively vindictive because (1) the same judge who sentenced defendant during the original sentencing also conducted the resentencing hearing; (2) there was no new information available to the trial court during resentencing which would warrant increased sentences; (3) no major misconduct citations or incidents occurred while defendant was incarcerated that might demonstrate that he was incorrigible; and (4) there was a significant disparity between the original sentences and the current sentences imposed. Defendant therefore characterizes the concurrent sentences imposed here as "increased sentences" that must trigger a presumption of vindictiveness. The trial court increased defendant's minimum sentences on remand from consecutive terms of 25 to 55 years' imprisonment to concurrent terms of 30 to 110 years' imprisonment. However, the trial court opted not to impose consecutive sentences on remand. Thus, defendant's sentence decreased overall, at least in terms of time served. Simple math suggests this does not constitute judicial vindictiveness. Nevertheless, we recognize that each sentence must be viewed individually rather than in the aggregate to determine its impact. *People v Mapp*, 224 Mich App 431, 435; 569 NW2d 523 (1997). Therefore, we will evaluate the trial court's imposition of each of defendant's sentence on remand to determine whether the court engaged in vindictive sentencing.

When the same judge resentences a defendant and increases the sentence, the increased sentence may be presumptively vindictive. *Warner*, 339 Mich App at 159. However, "under *Pearce* and its progeny, this is only the first step of the analysis," and as previously noted, Michigan's appellate courts have not invoked a presumption of vindictiveness when the reason for the imposition of a harsher sentence is apparent. *Id*. at 160. Instead, "[b]efore the *Pearce* presumption can be invoked, an appellate court must examine the surrounding circumstances to determine whether there is a reasonable likelihood that the defendant was punished for successfully appealing his conviction." *Id*.

The facts here do not support invoking a presumption of vindictiveness. Defendant asserts that the sentences are "vindictive," but does not specify how the trial court's conduct demonstrated any retaliatory motivation during resentencing. While we recognize that the same trial judge presided over both the sentencing and resentencing hearings, the trial court provided a detailed rationale for its sentencing decision on remand. The trial court noted defendant's lack of remorse and lack of potential for rehabilitation, and highlighted the psychological ramifications of the assaults on SJ in detail, going so far as to read portions of SJ's trial testimony into the record. Thus, the trial court sufficiently justified its rationale for imposing harsher sentences on remand. Further, although the minimum sentence for each conviction was increased by five years after defendant's successful appeal in this Court, we find that the trial court reasonably increased the length of the concurrent sentences given the severity of defendant's offenses. See *Warner*, 339 Mich App at 160 (noting the trial court's imposition of a more severe sentence that better accounted for the severity of the sentencing offense was a "legitimate response to criminal conduct."). Moreover, it is significant that the trial court opted not to impose consecutive sentences on remand. As referenced above, a simple mathematical computation evinces that defendant has in fact derived a benefit from resentencing, as he potentially may serve less time under the concurrent sentences than if the trial court merely re-imposed the original consecutive sentences.

The possibility of judicial vindictiveness is only speculative and the presumption does not apply. Consequently, "the burden remains upon . . . defendant to prove actual vindictiveness[.]" *Id*. at 161 (quotation marks and citation omitted). He has not done so here. Much like the circumstances in *Warner*, "the record is absent of any expressed hostility that suggests that the trial court deliberately penalized defendant for successfully exercising his right to appeal his previous conviction and sentence." *Id*.

Defendant additionally argues that the trial court did not provide any new or previously unknown information to justify the purportedly harsher sentences. This is not accurate. The trial court did provide a reasonable explanation, stating that it chose to impose upward departure sentences to account for factors that were not adequately considered by the sentencing guidelines range or the statutory minimum under MCL 750.520b(2)(b). We again note that while the minimum term of defendant's individual sentences increased by five years after resentencing, defendant's potential incarceration substantially decreased because of the trial court's imposition of concurrent sentences. Ultimately, because the trial court provided an appropriate rationale for the sentences on the record, defendant's claim must fail.

## B. DEPARTURE SENTENCING

Defendant next argues that he is entitled to resentencing because the trial court imposed disproportionate and unreasonable upward departure sentences on remand. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "The standard of review when determining whether a departure sentence was reasonable is abuse of discretion." *Warner*, 339 Mich App at 153. "A trial court abuses its discretion when it applies a minimum sentence that violates the principle of proportionality, which occurs when the trial court 'fail[s] to provide adequate reasons for the extent of the departure sentence imposed . . . .' " *Id*., quoting *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

Consequently, the "key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.* at 472 (quotation marks and citation omitted). In *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017), this Court expressed that

> relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [(quotation marks and citations omitted).]

Moreover, a sentencing court may consider a defendant's misconduct while in custody, expressions of remorse, and potential for rehabilitation. *People v Barnes*, 332 Mich App 494, 505; 957 NW2d 62 (2020) (citation omitted).

The sentencing guidelines are now advisory. Trial courts are no longer required to provide substantial and compelling reasons for departure after *Lockridge*. However, a minimum sentence imposed by a court may nevertheless constitute a departure if it exceeds a minimum sentence mandated by statute, such as the 25-year mandatory minimum in MCL 750.520b(2)(b), or if it exceeds the minimum sentencing guidelines range. *People v Wilcox*, 486 Mich 60, 71-72; 781 NW2d 784 (2010); *People v Payne*, 304 Mich App 667, 671-672; 850 NW2d 601 (2014). In the instant case, the top end of defendant's minimum sentencing guidelines range was 15 years' imprisonment, but longer minimum sentences of at least 25 years for each count of CSC-I were mandatory under MCL 750.520b(2)(b). Consequently, the mandated 25-year minimum sentence for each CSC-I conviction is the relevant benchmark for determining the extent to which the trial court departed from the guidelines. Put differently, anything above a flat 25-year sentence constitutes an upward departure. Thus, the 30-year minimum sentences imposed by the trial court constituted upward departures of five years for each conviction.

This Court has held that "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation" may be considered by a trial court under the proportionality standard. *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted). During resentencing, the trial court expressly acknowledged that it was departing from the minimum sentencing guidelines range and the 25-year mandatory minimum, and gave a lengthy explanation for the departure. The trial court expressed incredulity at the fact that defendant, a grown man and father, placed the blame for the sexual assaults on his five-year-old daughter and failed to take responsibility or show remorse for his actions. The trial court further observed that the crime was especially heinous given SJ's youth and relationship to defendant, noting that "[c]hildren expect their parents to shelter them from the unknown dangers and threats and to provide them with a home that is a safe haven. [SJ]'s safe haven was in another home away from her biological father."

Moreover, as the trial court correctly observed, the offense variables (OVs) did not adequately account for any of these factors. For example, regarding OV 4, the trial court noted "[w]hile the [c]ourt assessed 10 points for OV-4 related to serious psychological injury requiring professional treatment that occurred to a victim, that portion of the sentencing guidelines does not

-5-

begin to calculate the emotional and psychological impact for sexual assaults that [SJ] endured by her biological father." Additionally, while serious psychological injuries resulting from criminal sexual conduct are considered in the scoring of OV 4, the timing and location of the sexual assaults were not. Defendant perpetrated the assaults after calling SJ to a separate room while her siblings were home, and only stopped when SJ's mother knocked on the door. Not only was this a violation of SJ's person, but a violation of her home. As the trial court correctly observed, these factors were not sufficiently accounted for by the sentencing guidelines. See *Lampe*, 327 Mich App at 129 (noting that the defendant initiated the criminal sexual conduct in the victim's home, and robbed the victim of a sense of security which was not adequately accounted for in the OV 4 scoring). Finally, 15 points were assessed under OV 10 (exploitation of vulnerable victim), but OV 10 nevertheless did not effectively consider *both* the exploitation of SJ's youth and the exploitation of the domestic relationship between defendant and SJ, his biological daughter.

In sum, although the trial court departed from the mandatory 25-year minimum when sentencing defendant, it articulated several appropriate reasons to justify the departure. Therefore, the trial court did not abuse its discretion by sentencing defendant to concurrent terms of 30 to 110 years' imprisonment for each CSC-I conviction.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien